*New-London,*
*July, 1837.*

Turnpike So-
ciety
*v.*
Hosmer.

————————

CRANDALL *against* GALLUP and another.

A plea of estoppel to an action of ejectment, is allowable.

The objection that a special plea amounts to the general issue, is not available on demurrer.

In a plea of estoppel nothing is to be taken by inference ; but every fact necessary to create the estoppel, must be directly and precisely alleged.

*New-London,*
July, 1837.

Crandall
*v.*
Gallup.

Therefore, where a former decree in chancery on a bill brought by *A,* as administrator of the estate of *B,* was pleaded as an estoppel; and it appeared from the plea, that *A* claimed to be administrator, and as such brought his bill, and described himself as such throughout; but there was no direct averment that *A* was in fact administrator; it was held, that the plea, for this cause, was insufficient.

A former decree in chancery operates as an estoppel only as to the facts put in issue and found.

Therefore, where a bill seeking to set aside a certain deed, stated, the plaintiff was informed and believed that *P* executed the deed in question, and then proceeded to state facts to invalidate it, but did not aver directly, that *P* executed the deed; it was held, that the execution of the deed not being in issue, a decree finding the facts alleged in favour of the defendant, was not available to estop a party claiming against the deed.

Admissions made by an administrator, in a bill in chancery, are not available to bind or affect the estate.

There is no privity between an administrator and a purchaser under a sale by order of the court of probate.

Therefore, a decree in a suit to which the administrator was a party, is not available to estop the purchaser, who was not a party.

THIS was an action of ejectment for two tracts of land in *North-Stonington.*

The defendants in their plea set forth a decree in chancery, claiming that the plaintiff was thereby estopped to prosecute this action. The plea averred, that the plaintiff had no right or title to the demanded premises, except by virtue of a deed from *Benjamin F. States,* executed on the 14th of *May,* 1836, in pursuance of an order of the court of probate for the sale of the real estate of *Charles E. Phelps,* deceased. It then stated, that in *August,* 1833, *Benjamin Pomeroy,* a citizen of this state, as administrator of the estate of said *Charles E. Phelps,* preferred a bill in chancery to the superior court against *Deforest Manice, Benjamin F. Phelps* and *Erasmus D. Foote,* of the city of *New-York,* stating, that he was informed and believed, that said *Charles E. Phelps,* a few days before his death, *viz.* on the 16th of *May,* 1833, executed, with the formalities required by law, a deed, purporting to convey to said *Manice,* in trust, to secure him and said *Foote* for certain debts and responsibilities of the grantor and said *Benjamin F. Phelps* to them, all his, the grantor's, real estate in the town of *North-Stonington,* including the demanded premises. After setting forth this deed of conveyance, the bill alleged, that when it was made, the grantor was weak and much impaired in body and mind, and was daily in expectation of dying; that

he was then at the house of his brother *Benjamin,* a partner in business with *Manice,* and under his entire influence and con-troul; and that he and *Manice* fraudulently, as it respected all the creditors of the grantor, combined together to obtain said instrument, thereby to defraud, delay and wholly deprive them of all the means of obtaining any part of their debts; praying that such conveyance from *C. E. Phelps* to *Manice* should be set aside and declared void as against the plaintiff in the bill and the creditors of the grantor; that this bill having been duly served and returned to the superior court, the defendants therein appeared and removed the suit to the circuit court of the *United States* for the district of *Connecticut,* the matter in dispute exceeding the value of 500 dollars; that in *September,* 1834, said *Benjamin Pomeroy,* as administrator of the estate of said *Charles E. Phelps,* filed in the circuit court a supplemental bill, stating, that since the original bill was pre-ferred, the amount of the intestate's assets and of the just claims against his estate had been ascertained according to law, the former being 17,718 dollars, and the latter 24,872 dollars; and further averring, that at the time the conveyance in question was made, the grantor was not only in failing circumstances, but was actually insolvent, and it was made with a view to such insolvency, and to defraud the creditors of the grantor, whose claims had been allowed by commissioners; that *Man-ice* and *B. F. Phelps* filed separate answers, under oath, deny-ing the material allegations of the original and supplemental bills; and that after a full hearing, the court, in *September,* 1835, passed a decree, by which it was found, that "said *Charles E. Phelps,* at the time of the execution of the said deed by him to the said *Deforest Manice,* bearing date the 16th of *May,* 1833, was in possession of his mental faculties, and in all respects fully competent to make and execute said deed so as to convey and transfer the title to the lands purport-ing by said deed to have been conveyed to the said *Manice;* and that he was under no restraint or influence, which could in law or equity defeat or impair the said title, as it purported to have been conveyed; and that said deed was given for a full and valuable consideration, without fraud;" and there-upon the court decreed, that "said deed and the title thereby conveyed, should be in all things confirmed, and that the bill be dismissed." The plea further averred, that after the pass-

ing of this decree, *Manice* entered into possession of the de-manded premises, and subsequently, *viz.* on the 29th of *March*, 1836, executed and delivered to the defendants in this action, a deed of such premises, thereby conveying a valid title to them, their heirs and assigns forever; and that under this title they entered, and, at the time mentioned in the plaintiff's declaration, peaceably ejected him from the premises, which they have ever since held, as they had good right to do.

To this plea the plaintiff demurred specially, assigning sundry causes of demurrer. The case was then reserved for the advice of this court.

*Goddard* and *Baldwin*, in support of the demurrer, contended, 1. That a plea of estoppel to an action of ejectment is not allowable, as the defendant cannot give colour of title to the plaintiff. *Wood* v. *Jackson* d. *Genet*, in err. 8 *Wend.* 1. 35. 40. If in this case the matter relied on is available, the defendants must give it in evidence, when their title is attacked. 1 *Chitt. Plead.* 459. *Shelton* v. *Alcox* & al. 11 *Conn. Rep.* 240. *Adams* v. *Barnes*, 17 *Mass. Rep.* 365. 368, 9.

2. That the plea is bad, because it amounts to the general issue. It asserts a better title in the defendants.

3. That the plea is deficient in the requisite certainty, inasmuch as it does not shew, that *Pomeroy* was administrator. 2 *H. Bla.* 530. *Lawes' Plead.* 55, 6.

4. That the decree on *Pomeroy's* bill is no estoppel of the present plaintiff; he being a purchaser under a judicial sale, made by *States*, by order of probate, with no notice of any such decree; and there is *no privity* between the plaintiff and *Pomeroy. Co. Litt.* 352. *Pomeroy* never had any *interest* in the estate; nor does the plaintiff derive any *title* from him. Between *States* and *Pomeroy* there is no privity. They each derive all their powers from the court of probate. Each is agent of the law merely, for the purposes for which he was appointed. For the same reason, there is *no privity* between an administrator *de bonis non* and a prior administrator. *Alsop* v. *Mather* & al. 8 *Conn. Rep.* 584. The title to real estate remains in the heir, devisee or grantee, until divested, by a sale, pursuant to authority from the court of probate; and a purchaser under that authority cannot, by the policy of our law, be affected by, or be presum-

ed to have had notice of, any proceedings not appearing on the <span>*New-London,* July, 1837.</span> probate or town records.

<span>Crandall *v.* Gallup.</span>

5. That as administrator, *Pomeroy* had no power to bind or affect the real estate, by an estoppel, whether by an admission, (*Pease* v. *Phelps,* 10 *Conn. Rep.* 62. 68. *Peck* v. *Botsford,* 7 *Conn. Rep.* 173. *Alsop* v. *Mather,* 8 *Conn. Rep.* 584.) or by a deed unauthorized by the court of probate, (*Lockwood* v. *Sturdevant,* 6 *Conn. Rep.* 374.) or if authorized, not referring to and founded on that authority. *Griswold* v. *Bigelow,* 6 *Conn. Rep.* 259. 268. *Lockwood* v. *Sturdevant, ub. sup.* Personal estate he may transfer, or bind by his acts; for the legal title to that vests in him, and he is accountable for it as a trustee. But in the real estate he has no interest, and no power over it, until it is conferred by the court of probate. Hence it is, that he can maintain no action *at law* for recovery of the possession. He can never be disseised. The same reason equally prevents him from being able to sustain a *bill in chancery* affecting the real estate. He has *no interest.* If he had, he might as well sue at law as in chancery. *Calv. on Part.* 11. 143, 4. 21. 77. 3 *P. Wms.* 34. No person can bring a bill in chancery as the representative of another, unless he have an interest himself in the object of the suit.

6. That the decree is no estoppel, because it is founded on evidence admissible only for *defence* to a bill in chancery—*viz.* the answers of the defendants. Such evidence is never admissible for the *establishment of a title.* In our state courts, it is not admissible for any purpose, unless the defendant is made a witness, by the voluntary act of the plaintiff.

7. That the legal title was never in issue in the circuit court. That the decree, so far as it goes to establish *that,* goes beyond the exigencies of the case; and therefore, it is not evidence. *Manice* could not have instituted a bill against *Pomeroy* to establish the legal title, and thereby bind the real estate. Much less could he sustain such a bill, by his own evidence. And much less still could he have the title established, without a *cross-bill ;* which the defendants to such cross-bill might answer, and avail themselves of their answers as evidence. 1 *Ball & Beatty,* 217. 2 *Mad. Chan.* 429. 2 *Atk.* 213.

8. That the decree is inadmissible, because the parties are not the same.

*Strong* and *W. P. Cleaveland,* jun., contra, contended, **1.** That the plea of the defendants does not amount to the general issue. On the contrary, it precludes the general issue altogether. It assumes that the plaintiff has no right to make any averment on which an issue can be formed : It denies his right to present any such issue.

**2.** That if the plea does amount to the general issue, this is no ground of demurrer. *Whittelsey* v. *Wolcott,* 2 *Day,* 431. *Gould's Pl.* 350. & seq.

**3.** That a plea of estoppel, which neither admits nor denies the plaintiff's allegations, but advances new matter, which precludes him from availing himself of them, is a proper plea to an action of ejectment.

**4.** That a decree in chancery is no less available as an estoppel, than a judgment at law. 1 *Phil. Ev.* 262. *Hopkins* v. *Lee,* 6 *Wheat.* 113, 4.

**5.** That the matter pleaded in this case embraces the essential requisites of an estoppel. The precise point in controversy here was put in issue, by *Pomeroy's* bill ; it was material and traversable ; and it appears from the record. *Smith* v. *Sherwood,* 4 *Conn. Rep.* 278. *Abbe* v. *Goodwin,* 7 *Conn. Rep.* 377. *Co. Litt.* 352. *b.*

**6.** That the effect of an estoppel is, to preclude parties and privies from denying the point or matter of fact, which has been put in issue and decided. *Outram* v. *Morewood,* 3 *East* 355. See also *pp.* 346. 358. 364. 366. So all persons claiming under and through the party estopped, are bound by the estoppel equally with the parties themselves. *Stow* & al. v. *Wyse,* 7 *Conn. Rep.* 214. 220. An estoppel operating upon the title, runs with the land. *Trevivan* v. *Lawrence* & al. 1 *Salk.* 276. *Palmer* v. *Ekins,* 2 *Stra.* 818.

**7.** That the finding and decree of the circuit court operate as an estoppel against the *administrator* and those claiming through him. If the estate is insolvent, the administrator is, by our law, the representative of the *real estate* and of the *creditors* of the intestate. The real estate is assets in his hands. He must inventory it and account for it ; and is liable, if he does not. He may sue for the rents and profits of the real estate, as well as for debts. He can foreclose a mortgage, and thereby change the title. If the title is doubtful, he may institute proceedings to settle it.

New-London,
July, 1837.

Crandall
v.
Gallup.

8. That the appointment of *States* and his interposition to sell the estate, do not place the purchaser in any different situation than if the estate had been sold directly, by the administrator. *States* was the agent of the administrator and of the creditors for this particular purpose. *States* was appointed at the request of the administrator. They both represent the same right.

9. That the finding of the circuit court is not the less operative as an estoppel because that court received the answer of the defendants under oath. Does the difference in the rules of evidence and course of proceeding in courts of equity and of law, make any difference as to the effect of the finding ?

WILLIAMS, Ch. J. A variety of objections have been made to the plea of the defendants. It is said, such a plea to this action, is hardly to be found in our books. The action of ejectment, in *England*, and some of our sister states, is a peculiar action ; of comparatively recent origin ; and is shaped and moulded, by the court, in such a manner as to relieve it from many of the technical difficulties, which encumbered the ancient real actions. And if, as is said, in *Wood* v. *Jackson*, 8 *Wend.* 35. 40. the law of the action does not allow a special plea, it does not follow, that the rule applies to our action of ejectment, or rather our action of *disseisin.* This is not that fictitious remedy, which exists in *England* and *New-York ;* but it is the only real action known to our law, and comprehends, says Judge *Swift*, all the actions in *England*, by writ of right, writ of entry and ejectment, with all the multifarious divisions into which they are branched. The sole object is, to enable the owner of lands to recover the possession from the disseisor, and his damages for the detention ; and is wisely adapted to this single object. 2 *Sw. Syst.* 67. This being the case, we must look to our own rules and practice ; and when we advert to the case of *Smith* v. *Sherwood*, 4 *Conn. Rep.* 276. and find the most able counsel engaged, and the court equally divided upon the questions that were made by counsel, and no objection from either that the plea in itself was inadmissible, there can be no doubt what had been our practice, and what was understood to be the rule in this state upon that subject. That the two Judges who were for sustaining the plea, in that case, supposed it was a proper plea in an action of

*New-London,*
*July, 1837.*

Crandall
*v.*
Gallup.

ejectment, is apparent.    It is good evidence that the two Judges who held the plea was not good, in that case, were of the same opinion, as they do not intimate any objection upon that ground. And very soon after, Ch. J. *Hosmer,* one of the two who held that plea insufficient upon the circuit, held, that a plea of estoppel founded upon facts ascertained between the same parties in an action of trespass, was a good bar to an action of ejectment.    *Hale* v. *Wells,* Superior Court, *Hartford* county, *September* term, 1823.    And when we consider, that the object of this suit is to settle titles to real estate, in the most simple and speedy manner, we should require strong reasons to induce us to depart from their opinions.

Another objection to this plea, was, that it amounted to the general issue.    Without inquiring whether the fact is so, it is sufficient to say, that it has been decided, by this court, that this objection could not prevail upon demurrer to the plea.    *Whittelsey* v. *Wolcott,* 2 *Day,* 431.    See also *Ward* v. *Blunt,* 1 *Leon.* 178.    *Warner* v. *Wainsford, Hob.* 127.

Objections were also made as to the right of *Pomeroy* to bring the question regarding the real estate before a court, and the effect of any decree of that court founded upon the testimony of one of the parties; and particularly, as to the effect of the decree upon this bill—a decree establishing the title.    These objections this court do not think it necessary to examine, as there are others which must prevail.

The first, though of minor importance, is, that the plea no where avers, that *Pomeroy* was in fact administrator on the estate of *Charles E. Phelps.*    It avers, indeed, that he claimed to be such; that as such, he brought his bill; and throughout describes him as such; but there is wanting that direct and precise averment of that fact, which is necessary in a plea of this kind.

Another objection seems to us to be fatal to this plea.    The bill brought to the circuit court for relief against the deed made by *Phelps,* the intestate, alleges, that the plaintiff, *Pomeroy,* is informed and believes, that *Phelps* made and executed the deed in question to *Manice,* a short time before his death ; and then goes on to allege, that he was then weak and debilitated in mind and body, at a distance from his friends, and under undue influence ; and also, that it was given without a valuable consideration, and to defraud creditors.    It is then averred,

that the court found, that *Phelps* was competent to make a
deed, and was not under undue influence or restraint, and the deed was given for a valuable consideration. The facts then in issue were not as to the existence of the deed, but as to certain facts tending to invalidate it. Those facts, the court indeed find in favour of the defendants; and so far as those facts are found, they would be conclusive between the parties. But the existence of the deed was not put in issue, and of course, was not found by the court, except as it seems fairly to be inferable from the fact that they passed upon the attending circumstances. But in a plea of this kind, nothing is to be taken by inference: every thing is to be clearly and precisely alleged and found, or it cannot estop the parties to it. *Fairman* v. *Bacon,* 8 *Conn. Rep.* 418.

If it be said, that the administrator admits the execution of the deed, by his bill to set it aside, perhaps the same answer may be given. He only avers, that he is so informed and believes. This will hardly amount to such an admission as would estop a party. Be that however as it may, it has been often decided, that the admissions of an administrator could not bind or affect the estate. *Peck* v. *Botsford,* 7 *Conn. Rep.* 172. *Pease* v. *Phelps,* 10 *Conn. Rep.* 68.

The plaintiff, in the case before us, may perhaps intend to show, that in point of fact no deed was ever executed by *Phelps.* He may deny the hand-writing of *Phelps,* or the delivery, unless he is precluded by the proceedings in the circuit court; and as those facts were not in issue there, and can only be drawn by inference from the finding of the court or from the admissions of the administrator, we cannot say, that this plaintiff is estopped, by that finding or those admissions, from proving, if he can, that the deed was not executed at all.

Were there no other objections, we should say, that so far as the circuit court have found facts in issue between the parties necessary to support their decree, so far the parties will be bound, and no farther.

But another objection has been made to this decree, that this plaintiff is not privy to it. That suit was between *Benjamin Pomeroy,* administrator on the estate of *Charles E. Phelps,* and *De Forest Manice:* this between *Crandall,* a purchaser of the same estate under one *States,* who was appointed, by the court of probate, to sell the estate to pay the

*New-London,*  debts of *Charles E. Phelps,* whose estate had been duly found
*July, 1837.*  to be insolvent, and the defendant, who entered under *Manice.*

Crandall
*v.*
Gallup.

The plaintiff claims, that he did not purchase of *Pomeroy,* the administrator, but of *States,* who was appointed, by the court of probate, to sell to pay the debts of the estate of *Charles E. Phelps.*  The plaintiff is claiming title under a deed from the person legally authorized to sell the estate for the payment of debts ; and as the court of probate may appoint the administrator, or a third person, to perform this duty, the court are of opinion, that the same effect would result to the purchaser, whether the sale was made by him, directly or indirectly.  It is made in consequence of the situation of the estate, as shown by the administration account; the avails are to go into his hands to pay the debts of the intestate ; and the third person is appointed at his request.  And if the purchaser would be estopped, by the acts of the administrator, had he sold the property, we see no reason to say, that he ought not to be estopped, because the sale is now effected by another person appointed at his request.  The familiar maxim, that what is done by another, is done by himself, ought, in this case and for this purpose, to be applied.  But we are of opinion, that the purchaser cannot be said, in any sense, to be privy to these proceedings by the administrator.  It is true, that the creditors, or the administrator as their representative, have a lien upon the real estate of their debtor for the payment of debts.  *Griswold* v. *Bigelow,* 6 *Conn. Rep.* 265.  *Graff* v. *Smith's* admr's. 4 *Dal.* 481.  *Ricard* v. *Williams,* 7 *Wheat.* 121.  This, however, does not give to the administrator, any legal interest in the estate, so as to enable him to bring ejectment.  *Goodrich* v. *Thompson,* 4 *Day,* 215.  *Drinkwater* v. *Drinkwater's* adm'r. 4 *Mass. Rep.* 354. 359.  Nor do we inquire whether the circuit court would have sustained the bill as to the real estate by this administrator, had that question been distinctly presented.  This court has sustained a bill for an injunction, by an attaching creditor, who has no legal interest in the estate attached.  *Camp* v. *Bates,* 11 *Conn. Rep.* 51.

We return to the question, is there any privity between the administrator and the purchaser under this judicial sale ?  It cannot be claimed, that there is any privity of *blood.*  Nor is there any privity of *estate,* as the administrator has no interest whatever in the real estate.  It is a fund for the payment of

debts, when necessary; but until wanted for that purpose, the freehold is vested in the heir.   The administrator or his substitute has a mere power to sell, not coupled with an interest in the property.   There is, then, no privity of estate.   Is there a privity *in law?*   The cases put, by Lord *Coke,* to illustrate what he calls *privity in law,* are, lords by escheat, tenant by the curtesy, tenant in dower, the incumbent of the benefice, and others that come under by act in law or in the *post.*   *Co. Litt.* 352. *a.*   In the cases of escheat, curtesy and dower, the several parties come in as much by the mere operation of law as the heir; and although, strictly speaking, they do not take by descent, the law casts the property upon them in much the same manner.   In the case of escheats, the lord is said to be *ultimus haeres;* (2 *Bla. Com.* 245.) and the title vests in him, without waiting for his own deed or agreement, and as much by the mere act of law as that of an heir in the case of a descent.   *Co. Litt.* 18 *a.* No. 106. by *Hargrave.*   So upon the death of the wife, the freehold is in the husband as tenant by the curtesy, immediately, without even an entry.   1 *Cruise's Dig.* 172. *sec.* 28.   And although a tenant in dower, by the common law, cannot make entry, until dower is assigned, yet after such assignment, she is considered in of the estate of the husband, and not of the heir.   *Co. Litt.* 241. And by our law no assignment of dower is necessary.   *Stedman* & al. v. *Fortune,* 5 *Conn. Rep.* 462.   Privity in law, then, exists where the person taking the estate is in by mere operation of law.   Here, there was not, upon the death of the intestate, any legal subsisting connexion between the administrator and the purchaser of this estate.   Indeed, it was entirely uncertain, whether there ever would be occasion for such a connexion.   It depended upon a great variety of facts, afterwards to be ascertained; and then the operation of law does not transfer the estate.   The party, by his own act, becomes a purchaser; and the law then so far operates as to give efficacy to the sale of the administrator or his substitute.   But it does not follow, that he is in under the administrator, any more than the dowress is under the heir, because as the freehold is in him, he must assign dower to her.   The administrator has not in him the freehold, as the heir has.   He is the mere hand of the law to pass over this property to him who will advance the most money to pay the debts of the deceased.   He is in a

*New-London,* July, 1837.

Crandall
*v.*
Gallup.

*New-London,*
*July, 1837.*

Crandall
*v.*
Gallup.

situation similar to that of an executor, appointed by will to sell property to pay debts. "In this case, though the devisor dies, seised of the tenements, and the tenements descend unto the heir, yet the executors, after the death of the testator, may sell the tenements so devised to them, and put out the heir. *Litt. sec.* 169. "And where they sell, the vendee is in, by the will of the devisor, paramount the descent." *Jenk. Cent.* 184. case 75. The administrator here has, certainly, no greater interest, than the executors have in that. In both cases, the vendor is acting under a power ; and if, in the one case, the purchaser is in under the will of the devisor, he must, in the other case, be in under the intestate. And when in *Ricard* v. *Williams,* 7 *Wheat.* 114. it is said, by *Story,* J., that the estate passes to the purchaser, upon his entry into the land, by operation of law, so that he is in under the intestate, we understand him to mean, that the purchaser is in by operation of law under the intestate, instead of being in under the administrator ; and the consequence is, that the purchaser under a sale by order of the court of probate, cannot be said, in any sense, to be privy in law or in estate with the administrator who makes such sale. And the consequence is, that the superior court must be advised that the plea in bar is insufficient.

In this opinion the other Judges concurred, except HUNTINGTON, J., who declined giving an opinion, having been of counsel in a cause connected with this.

Plea insufficient.